UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY HOUSTON, | |
| Plaintiff, | Case No. 18-cv-5981 |
| v. | |
| FIFTH THIRD BANK, | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Houston claims that someone made unauthorized withdrawals from his bank account with Defendant Fifth Third Bank. Plaintiff now sues Defendant, claiming that Defendant failed to credit him for those withdrawals, and instead wrongfully concluded that Plaintiff was responsible for those withdrawals. He brings a three-count complaint, alleging violations of the Electronic Funds Transfer Act (EFTA) and breach of contract. Defendant moves to dismiss [25]. For the reasons explained below, this Court grants Defendant's motion and dismisses Plaintiff's first amended complaint without prejudice.

**I.  The Complaint's Allegations**[1]

In June 2018, Plaintiff maintained a deposit account with Defendant. [23] ¶ 6. On or about June 15, 2018, an unknown third party deposited a check in Plaintiff's account at one of Defendant's branches. *Id.* ¶ 8. Plaintiff claims that the check "was altered or fictitious," and that the endorsement signature on the check looks nothing

---

[1] This Court takes these facts from Plaintiff's first amended complaint [23].

1

like his own. *Id.* ¶ 10. Plaintiff alleges on information and belief that Defendant did not compare the endorsement signature on the check with the signature it had on file for Plaintiff. *Id.* ¶ 11.

The next day, June 16, 2018, between 9 a.m. and 10 a.m., Plaintiff received an email from Defendant stating that his passcode changed. *Id.* ¶ 12. Plaintiff promptly called Defendant to report that he did not authorize the passcode change and asked that Defendant lock his account. *Id.* ¶ 13. Plaintiff also changed his passcode. *Id.* ¶ 14.

Plaintiff asserts that Defendant should have prevented all further activity on his account at that point, but Defendant did not do so. *Id.* ¶¶ 14–15. Later that same day, an unknown third party changed the passcode for Plaintiff's account, twice, and then withdrew $4,030 from Plaintiffs account, via three withdrawals at an ATM and one electronic fund transfer through Zelle. *Id.* ¶ 17. Plaintiff called Defendant multiple times that day to report the attempted fraud on his account; Defendant told Plaintiff the situation would be "rectified." *Id.*

Subsequently, Defendant temporarily credited Plaintiff $4,030 and sent him a letter confirming the temporary credits on June 20, 2018. *Id.* ¶ 25. But on July 3, 2018, Defendant sent Plaintiff two letters reversing the credits, stating that "our research confirms that the transaction was valid." *Id.* ¶ 28. Plaintiff complained about this to the Chicago Police Department, the Federal Reserve System, the Consumer Financial Protection Bureau (CFPB), and the FBI. *Id.* ¶¶ 32, 34, 35; [23-11].

Defendant, in response to receiving a copy of Plaintiff's complaint to the CFPB, wrote to Plaintiff on August 1, 2018. [23] ¶ 36; [23-12]. In that August 1 letter, Defendant said that after completing its research on the parties' dispute, it "linked [the transactions] to other known fraudulent activity wherein the customer participated by giving the unauthorized party their debit card and PIN." [23-12] at 2. Defendant then reiterated its position denying Plaintiff's dispute. *Id.*

Plaintiff brings a three-count complaint. Counts I and II allege violations of the ETFA, and Count III asserts breach of contract. [23].

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however,

3

accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Further, in considering a motion to dismiss under Rule 12(b)(6), district courts may consider any facts set forth in the complaint, including its exhibits, that undermine the plaintiff's claim. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). When an exhibit to a complaint incontrovertibly contradicts the complaint's allegations, the exhibit ordinarily controls, even on a motion to dismiss. *Id.*

## III. Analysis

Defendant moves to dismiss all three counts of Plaintiff's first amended complaint. [25]. This Court addresses each count in order below.

### A. Count I: EFTA § 1693f

#### 1. § 1693f Standards

The EFTA protects consumers by supplying a "basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1328 (7th Cir. 1997) (quoting 15 U.S.C. § 1693(b)). Electronic fund transfers covered by the EFTA have three components: 1) a transfer of funds; 2) that is initiated by electronic means; and 3) debits or credits to a consumer account. *Id.*

Pertinent to Defendant's motion, under § 1693f, when a consumer notifies a bank that the consumer believes his account contains an error and the amount of such error, the bank shall within sixty days "investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation

and determination to the consumer within ten business days." *Id.* § 1693f(a). Errors include, among other things, unauthorized electronic fund transfers. *Id.* § 1693f(f)(1). If the bank determines that an error did occur, it must correct the error within one business day of such determination, crediting interest where applicable. *Id.* § 1693f(b).

The bank may also provisionally recredit the customer's account for the amount alleged to be in error, pending investigation and determination of whether an error occurred. *Id.* § 1693f(c). If the bank decides to do this, it must provisionally recredit the customer's account within ten business days after receiving notice from the customer. *Id.* If, after investigation, the financial institution determines that an error did not occur, "it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation." *Id.* § 1693f(d).

A bank may be liable for treble damages under § 1693f under the following two circumstances:

> **(1)** the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or

> **(2)** the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation[.]

*Id.* § 1693f(e).

### 2. Plaintiff's § 1693f Claim

Defendant moves to dismiss Count I, in which Plaintiff alleges that Defendant is liable for damages under § 1693f. [26] at 7–11; [23] ¶¶ 43–52.

In his complaint, Plaintiff does not allege that Defendant untimely issued provisionally credits. *See generally* [23]. To the contrary, Plaintiff alleges that Defendant temporarily credited his account and sent a confirmation letter about those credits on June 20, 2018, just a few days after he called Defendant to report the purported fraud on his account. *Id.* ¶¶ 17, 23, 25. As such, he cannot recover treble damages under § 1693f(e)(1), because that subsection requires Plaintiff to establish that Defendant failed to provisionally credit his account within ten days after receiving notice from Plaintiff.

Accordingly, this Court analyzes only whether Plaintiff can recover treble damages under § 1693f(e)(2), which requires him to plausibly plead that Defendant "knowingly and willfully concluded that [his] account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." Plaintiff asserts three sets of allegations to support his claim that Defendant acted in bad faith. As explained below, none of the allegations save Plaintiff's claim from dismissal.

First, Plaintiff asserts that Defendant refused to consider evidence that Plaintiff "was not in the area at the time" he engaged in the four transactions at issue, because he was trying out for a lifeguard position when "many of the transactions occurred." [23] ¶ 50. Exhibits to his own complaint, however, undermine this

assertion. For instance, Plaintiff attaches as Exhibit K a complaint that he wrote to the Consumer Financial Protection Bureau (CFPB) about Defendant's alleged wrongdoing. [23-11]. In that CFPB complaint, Plaintiff states that he was at a lifeguard tryout between 9 a.m. and 10 a.m. on June 16, 2018. *Id*. at 2. But in another exhibit Plaintiff attaches, Exhibit B, Defendant's account statement of Plaintiff's account reflects that the four transactions occurred *after* 10 a.m. on June 16, 2018— at 10:04 a.m., 10:24 a.m., 12:11 p.m., and 12:12 p.m. [23-2] at 3. Therefore, the exhibits directly undermine Plaintiff's allegation that he was at lifeguard tryouts at the time "many of the transactions occurred," *see* [23] ¶ 50, as well as his allegation that Defendant knowingly and willfully concluded that his account was in error despite the evidence available to it at the time of its investigation, *id.* ¶ 49.

Next, Plaintiff alleges that Defendant failed to consider—as part of its investigation—that Plaintiff did not sign the initial check deposited into his account. [23] ¶¶ 8, 10, 51. A letter dated August 1, 2018 from Defendant, however, reflects that Defendant *did* consider that "fraudulent check," ultimately concluding that the check—and subsequent debit card transactions—were actually part of "other known fraudulent activity wherein the customer participated." [23-12] at 2. This letter, which Plaintiff himself attaches as Exhibit L to his complaint, thus contradicts his allegation that Defendant failed to consider the initial check deposit as part of its investigation.

Finally, Plaintiff alleges that Defendant's ATMs, as well as third party ATMs and gas station card readers "have often been subjected to a fraudulent practice called

7

'skimming,' whereby hidden electronic devices are used to steal the personal information stored on debit cards and record PIN numbers." [23] ¶ 41. Plaintiff similarly asserts that Zelle has "been the subject of frequent hacking attacks." *Id.* ¶ 42. But even taking these allegations as true, this Court finds they fail to save Plaintiff's claim from dismissal because Plaintiff does not say that his own account was subjected to skimming or hacking. *See generally* [23]. Absent such an allegation, Plaintiff is left only to speculate that his transactions "*could have been*" part of a skimming or hacking scheme. *See* [27] at 7.

In short, after viewing Plaintiff's allegations, and comparing them to the exhibits Plaintiff attaches, this Court finds that Count I fails to plausibly state a § 1693f claim. His allegations are either directly controverted by the exhibits, or remain far too speculative to raise the possibility of relief above the speculative level. *See Twombly*, 550 U.S. at 555. For these reasons, this Court dismisses Count I.

### B. Count II: EFTA

Like Count I, Count II suffers from pleading defects warranting dismissal. In Count II, which Plaintiff labels "EFTA," Plaintiff's sole allegation states that Defendant "allowed unauthorized transactions to be made notwithstanding plaintiff's attempts to prevent them from being made." [23] ¶ 54. He fails, however, to substantiate this conclusory allegation, and fails to even identify which provision of the EFTA he claims Defendant allegedly violated.

Instead, Plaintiff requests—in Count II's individual prayer for relief—statutory damages pursuant to 15 U.S.C. § 1693m. That section of the EFTA,

8

however, is merely an enforcement mechanism for other statutory provisions, not an independent basis for liability. *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1094 (N.D. Cal. 2006).

Plaintiff does not address this pleading defect in his response to Defendant's motion; in fact, he does not address Count II at all. *See generally* [27]. And, at oral argument on Defendant's motion, Plaintiff attempted to clarify that Count II brings a violation under § 1693f. But if that were the case, Count II would be duplicative of Count I, which already alleges § 1693f violations. Thus, finding no plausible claim as currently alleged, this Court dismisses Count II.

### C. Count III: Breach of Contract

Defendant also moves to dismiss Plaintiff's breach of contract claim, in which Plaintiff asserts that Defendant violated the parties' account agreement by: (1) holding Plaintiff liable for the transfers; and (2) failing to shut down Plaintiff's account upon receipt of his phone call warning Defendant of unauthorized activity on June 16, 2018. [23] ¶¶ 55–56.

To prevail on a breach of contract claim under Illinois law, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) performance of all contractual conditions by the plaintiff; (3) a breach by the defendant; and (4) damages caused by the breach. *Lindy Lu LLC v. Ill. Cent. R. Co.,* 984 N.E.2d 1171, 1175 (Ill. App. Ct. 2013).[2]

---

[2] Defendant cites to Illinois law in its motion, [26] at 12, and Plaintiff does not dispute that Illinois law applies to his claim, *see generally* [27] at 11–12.

9

Problematically, Plaintiff neither attaches the parties' account agreement nor pleads the provision of the agreement he claims Defendant breached. *See generally* [23]. This failure alone subjects Plaintiff's breach of contract claim to dismissal. *See Burke v. 401 N. Wabash Venture, LLC*, No. 08 CV 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010) (dismissing breach of contract claims where the plaintiff failed to allege which provisions of the contract the defendant breached).

In response to Defendant's motion, Plaintiff attempts to cure his pleading defect by quoting the following provision from the parties' agreement:

> Limitation of Liability and Indemnification
> Customer expressly agrees that Bank is only liable for direct actual damages and only to the extent damages are recoverable under the UCC as varied by their Terms. Bank's obligation for services outside the scope of the UCC is limited to the exercise of reasonable and ordinary care. Bank shall not be liable for any errors or delays on the part of any third party, including without limitation, third parties used by Bank in executing a payment order or performing a related act due to any cause other than Bank's failure to exercise reasonable and ordinary care, and no such third party shall be deemed to be Bank's agent. Bank shall not be liable for its refusal to honor any request if, in good faith, it is unable to satisfy itself that such a request is valid, based upon adherence to procedures. IN NO EVENT SHALL BANK BE LIABLE FOR SPECIAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES, EXCEPT AS MAY BE OTHERWISE PROVIDED BY LAW EVEN IF BANK SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. Except as may be limited by applicable law, Customer agrees to indemnify Bank and hold it harmless (including the payment of reasonable attorneys' fees) from and against all damages, costs, expenses and liability to third parties arising out of, or in connection with, the services provided by Bank or actions otherwise pursuant to customer's instructions except where Bank is grossly negligent or engaged in willful misconduct.

[27] at 11–12; [26-1] at 29.

Plaintiff's citation to this provision, however, does not save his breach of contract claim. The provision does not say that Defendant may not hold Plaintiff liable for transfers. Nor does it say that Defendant had an obligation to shut down Plaintiff's account upon receiving notice of unauthorized activity. As such, Plaintiff fails to plead a breach of the parties' account agreement based upon this specific provision. And, because Plaintiff does not point to any other provision he claims Defendant breached, this Court dismisses Count III.

**IV.  Conclusion**

This Court grants Defendant's motion to dismiss [25] and dismisses Plaintiff's first amended complaint [23] without prejudice. Plaintiff is granted leave to replead—within 14 days of this Court's order—if he can do so consistent with this Court's order and his Rule 11 obligations. Any failure to replead within 14 days may result in conversion of the dismissal of his first amended complaint to a dismissal with prejudice.

Dated: March 14, 2019

Entered:

_____
John Robert Blakey
United States District Judge